IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No.: 20-cv-3416<br><br>Judge: |

**COMPLAINT**

Plaintiff, JOHN DOE, by undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and hereby alleges as follows:[1]

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.; the Copyright Act, 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1338(a) - (b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28

---

[1] Upon assignment of a case number and Judge, Plaintiff shall file an Amended Complaint under seal to identify Plaintiff and a Motion for Entry of a Temporary Restraining Order under seal. Because it is unknown when Plaintiff's forthcoming Motion for a Temporary Restraining Order will be ruled upon, Plaintiff's name is being temporarily withheld to prevent Defendants from obtaining advance notice and transferring funds/assets. Plaintiff is identified on the trademark and copyright registration certificates filed under seal as Exhibits 1 and 2.

1

U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademarks and copyright. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks and copyright to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks and copyright (the "Counterfeit Products").

4. Defendants created numerous Internet Stores and design them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of Plaintiff's registered trademarks and copyright, as well as to protect unknowing consumers from purchasing unauthorized products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks and copyright as a result of Defendants' actions and seek injunctive and monetary relief.

5. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

**THE PLAINTIFF**

6. Plaintiff designs, manufactures and sells products, which prominently display the internationally recognized and federally registered Plaintiff's trademarks and copyright (collectively, the "Plaintiff's Products"). Plaintiff's Products have become very popular, driven by Plaintiff's arduous quality standards and distinctive design. Among the purchasing public,

genuine Plaintiff's Products are instantly recognizable as such. In the United States and worldwide, Plaintiff's brand has come to symbolize high quality and Plaintiff's Products are well recognized.

7. Plaintiff incorporates a variety of distinctive marks in the design of its various Plaintiff's Products. As a result of its long-standing use, Plaintiff owns common law trademark rights. Plaintiff has also registered its trademarks with the United States Patent and Trademark Office and is the exclusive licensee of its copyright, including the marks for which true and correct copies of the United States Registration certificates are included in **Exhibits 1 and 2** attached hereto (collectively referred to as "Plaintiff's Trademarks and Copyright").

8. The U.S. registrations for Plaintiff's Trademarks are valid, subsisting, in full force and effect and incontestable pursuant to 15 U.S.C. § 1065. The registrations for Plaintiff's Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use Plaintiff's Trademarks pursuant to 15 U.S.C. § 1057(b). Plaintiff's Trademarks have been used exclusively and continuously by Plaintiff for many years and have never been abandoned. The copyright registration constitutes prima facie evidence of its validity and Plaintiff has the exclusive right to use the copyright pursuant to 17 U.S.C. § 501.

9. Plaintiff's Trademarks and Copyright are exclusive to Plaintiff and are displayed extensively on Plaintiff's Products and in Plaintiff's marketing and promotional materials. Plaintiff's Trademarks and Copyright have been the subject of substantial and continuous marketing and promotion by Plaintiff at great expense. In fact, Plaintiff has expended significant resources annually in advertising, promoting and marketing featuring Plaintiff's Trademarks and Copyright. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, a website, social media sites, and point of sale materials. Because of

these and other factors, Plaintiff's name and Plaintiff's Trademarks and Copyright have become famous worldwide.

10. Plaintiff's Trademarks and Copyright are distinctive when applied to Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its trademarks are manufactured to the highest quality standards. Plaintiff's Trademarks and Copyright have achieved fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with Plaintiff's Trademarks and Copyright is incalculable and of inestimable value to Plaintiff.

11. Plaintiff's Trademarks qualify as famous marks, as used in 15 U.S.C. §1125 (c)(1) and have been continuously used and never abandoned.

12. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting its Trademarks and Copyright. As a result, products bearing the Trademarks and Copyright are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. Plaintiff's Products have become well recognized.

**THE DEFENDANTS**

13. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including Illinois and within this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces

operating under the Defendants' Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Illinois and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

14. The success of Plaintiff's brand has resulted in its counterfeiting. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer and Aliexpress, including the Defendants' Internet Stores, which were offering for sale, selling, and importing counterfeit products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendants' Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2013 was over $1.74 billion, up from $1.26 billion in 2012. Internet websites like the Defendants' Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue.

15. Upon information and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union and PayPal. Defendants' Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized

website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

16. Plaintiff has not licensed nor authorized Defendants to use its Trademarks and/or Copyright, and none of the Defendants are authorized retailers of its genuine products.

17. Upon information and belief, Defendants deceive unknowing consumers by using the Plaintiff's Trademarks and Copyright without authorization within the content, text, and/or meta tags of its websites to attract various search engines looking for websites relevant to consumer searches for Plaintiff's products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants' Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for Plaintiff's genuine products. Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiff seeks to disable the Domain Names owned by Defendants through which their counterfeit products are sold.

18. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Internet Stores. For example, many of Defendants' names and physical addresses used to register their Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendants' Domain Names use privacy services that conceal the owners' identity and contact information. Upon information and belief, some of the tactics used by the Defendants to conceal their identities and the scope and interworking of their counterfeit operations to avoid being shut down include

regularly creating new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other fictitious names and addresses.

19. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores. For example, some of the Defendants' websites have identical layouts, even though different aliases were used to register their respective domain names. In addition, the counterfeit products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the counterfeit products were manufactured by a common source and that Defendants are interrelated. The Defendants' Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, similar payment and check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

20. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, when counterfeiters like Defendants receive notice of a lawsuit they will often register new domain names or online marketplace accounts under new aliases and move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive

growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

21. Further, counterfeiters such as Defendants typically operate multiple credit card merchant and PayPal accounts behind layers of payment gateways so that they can continue to operate in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from prior similar cases indicate that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

22. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation and potential new lawsuits.

23. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's Trademarks and Copyright in connection with the advertisement, distribution, offering for sale, and sale of counterfeit products into the United States and Illinois over the Internet. Each Defendants' Internet Stores offer shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell counterfeit products into the United States, including Illinois.

24. Defendants' use of Plaintiff's Trademarks and Copyright in connection with the advertising, distribution, offering for sale, and sale of counterfeit products, including the sale of counterfeit products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

25. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-24 of this Complaint.

26. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiff's registered Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiff's Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products provided under its Trademarks.

27. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with Plaintiff's trademarks without Plaintiff's permission.

28. Plaintiff is the registered owner of Plaintiff's Trademarks (Exhibit 1). The United States Registrations for Plaintiff's Trademarks are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in its Trademarks and are willfully infringing and intentionally using Plaintiff's Trademarks on counterfeit products. Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademarks are likely to cause and are causing confusion, mistake, and deception as to the origin and quality of the counterfeit products among the general public.

29. Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

30. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit Plaintiff's products.

31. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

32. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-31 of this Complaint.

33. Defendants' promotion, marketing, offering for sale, and sale of counterfeit products have created and are creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' counterfeit products by Plaintiff.

34. By using Plaintiff's Trademarks in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

35. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public under 15 U.S.C. §§ 1114, 1125.

36. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

37. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-36 of this Complaint.

38. Plaintiff's products have significant value and have been produced and created at considerable expense.

39. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted products, including derivative works. Plaintiff's products are the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights (Exhibit 2).

40. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants wrongfully created copies of the copyrighted products without Plaintiff's consent and engaged in acts of widespread infringement.

41. Plaintiff is informed and upon belief thereon alleges that Defendants further infringed Plaintiff's Copyright by making or causing to be made derivative works from Plaintiff's products by producing and distributing reproductions without Plaintiff's permission.

42. The trademarked and copyrighted products include a copyright notice advising the general public that Plaintiff's products are protected by the Copyright Laws.

43. Defendants, without the permission or consent of Plaintiff, have sold and continue to sell online infringing derivative works of Plaintiff's copyrighted products. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

44. As a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted products. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's products.

45. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

46. As a result of Defendants infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to its attorneys' fees and costs pursuant to 17 U.S.C. §505.

47. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be compensated fully or monetized. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's Copyright and ordering Defendants to destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of Plaintiff's products from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. §503.

**COUNT IV**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510/1, et seq.)**

48. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-47 of this Complaint.

49. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their counterfeit products as those of Plaintiff, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates likelihood of confusion or misunderstanding among the public.

50. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.

51. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to his reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

   a. using Plaintiff's Trademarks and Copyright or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks and Copyright;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing Plaintiff's Trademarks and Copyright and damaging Plaintiff's reputation and goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered including Plaintiff's Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

g. directly or indirectly infringing Plaintiff's Copyrights, including reproduction, distribution or making Plaintiff's copyrighted products available for distribution;

h. selling all unauthorized copies of Plaintiff's copyrighted work;

i. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products; and

j. operating and/or hosting websites at the Defendants' Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Plaintiff's Trademarks or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with his trademarks; and

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through j, above;

3) Entry of an Order that, at Plaintiff's choosing, the registrant of the Defendants' Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Defendants' Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendants' Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars take any steps necessary to transfer the Defendants' Domain Names to a registrar of Plaintiff's selection; or that the same domain name registries shall disable the Defendants' Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer and Alibaba Group Holding Ltd., Alipay.com Co., Ltd. and any related Alibaba entities (collectively, "Alibaba"), social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search

16

engines such as Google, Bing and Yahoo, web hosts for the Defendants' Domain Names, and domain name registrars, shall:

    a. disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit products using Plaintiff's Trademarks and Copyright, including any accounts associated with the Defendants listed on Schedule A;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiff's Trademarks and Copyright; and

    c. take all steps necessary to prevent links to the Defendants' Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendants' Domain Names from any search index; and

5) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Trademarks are increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, Plaintiff is awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of its trademarks and copyright;

7) That Plaintiff is awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

Dated: June 11, 2020　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　By:　*/s/ Michael A. Hierl*
　　　　　　　　　　　　　　　　　　　　Michael A. Hierl (Bar No. 3128021)
　　　　　　　　　　　　　　　　　　　　William B. Kalbac (Bar No. 6301771)
　　　　　　　　　　　　　　　　　　　　Hughes Socol Piers Resnick & Dym, Ltd.
　　　　　　　　　　　　　　　　　　　　Three First National Plaza
　　　　　　　　　　　　　　　　　　　　70 W. Madison Street, Suite 4000
　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60602
　　　　　　　　　　　　　　　　　　　　(312) 580-0100 Telephone
　　　　　　　　　　　　　　　　　　　　(312) 580-1994 Facsimile
　　　　　　　　　　　　　　　　　　　　mhierl@hsplegal.com

　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　JOHN DOE

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on June 11, 2020.

s/Michael A. Hierl